Case number 11-0638 consolidated with 11-2319. Marriage of Susan and James Kurotsuchi. Good morning, Justices. Mr. Haber, my name is Joel Ostro. I'm here on behalf of Jim Kurotsuchi, who is the respondent of Owen Cross FLE. Good morning, Justices. Good morning, Mr. Ostro. My name is Michael Haber, and I'm here on behalf of Susan Kurotsuchi, number 11-0638, Lawrence, who is the applicant of Owen Cross FLE. All right. Mr. Ostro. I would ask you, on behalf of Mr. Haber and myself, he does have a cross appeal. Yes. So is he going to go at the very end with a reply on his cross appeal? Well, how do you want to do it? Doesn't, you know. I mean, I would think that he'll do his argument. You're going to do your opening, and then you're going to respond and. And then do my cross appeal. Yes. And then you can. Reply in my mind, respond to his, and then. Well, we don't usually do it that way. Okay. No. But, well, I mean, I'm trying to think back on the last cross appeal. So was I. My last one where I've been. Yeah, I guess we would give you some limited rebuttal just for the cross appeal. Thank you. All right. Thank you, Your Honor. Okay. Mr. Ostro, you may proceed. May it please the Court, Mr. Haber and Mr. Owen. I've been involved in a couple hundred of these oral arguments, and generally I would not begin to focus on something as elementary as the standard of review and how a particular case gets analyzed. But in this particular instance, this was a summary judgment in a dissolution of marriage case. Well, you don't say de novo, do you? Yeah. You say we're reviewing the grant of the partial summary judgment de novo? I believe I did. Oh, okay. If I didn't use those words, then I certainly couldn't because. Maybe I'm a little confused. I believe it's de novo. I agree. Or the summary judgment, but the other issues are different. Right, and that's correct. And as has been said innumerable times, summary judgment is a drastic remedy. It's only appropriate when the judgment, without hearing the entire evidence in the case, is clear and free from doubt. And in addition to that, in this particular instance, you have an issue whether the property is marital or non-marital, which a party is compelled to prove by clear and convincing evidence. And thus, in this particular case, it was the burden of Ms. Lawrence to prove by clear and convincing evidence in a manner that was clear and free from doubt that Jim, that the only reason that this property was transferred into marital property or transferred into joint ownership and didn't otherwise become marital property afterwards, which I will also discuss, was because somehow or another Jim Kuratsuchi breached a fiduciary duty to her. Let me ask you this. Will we be looking at the entire record? I believe that that should be done, and I will explain why. So? I think there has to be an isolation of the summary judgment at first, but then I think the arguments that I'm going to make and the arguments that I did make, there was a motion to reconsider at the end after Judge Kennedy had heard a great deal of testimony related to the financial arrangements between the two parties with regard to the expenses on the house, the insurance from Allstate, and the other expenses. But I'm happy to talk about what facts went in at the time of summary judgment as well. Well, I think we kind of know that there was only affidavits presented at the time of the summary judgment. Correct, but the court in its ruling on it, in its oral ruling on it, said that Jim Kuratsuchi presented no facts, and that's at the time of his response to the summary judgment, and that's simply not true. So to the extent that this court would consider whether or not there was any meaningful opposition to the motion for summary judgment, I'm more than happy to discuss that. But I do think that one begins with this threshold inquiry as did Jim Kuratsuchi have a fiduciary duty to Susan at the time she transferred the property into tenancy by the entireties. And beyond that, were there evidentiary questions, material issues of fact, or inferences that should have led the court to deny a summary judgment at that time regardless? Now, to say that... Well, see, this is where I just all of a sudden have a question, and that is, at the trial, there was actually live testimony. Correct. So, I mean, I really, I don't know if we... I'm just questioning whether we look at everything now and then determine whether summary judgment was improperly... Well, I think so. ...on the issue. I think so, and my intention is to discuss everything that went in, both first isolating what went in at the time of the summary judgment and then talking about the rest of the evidence that was presented at trial that would have touched upon this issue before a motion to reconsider was filed. And I think the evidence that came in at trial actually vindicated the fact that there were inferences, reasonable inferences, that could be made from what was presented at the time of the summary judgment that would have ended up with a judge who was open-minded about this concluding that this was marital property. And I don't say that lightly, because in the judgment for dissolution of marriage, Judge Kennedy did say, I ruled against Jim Kiritsuchi because he tried to present a document that I thought was attorney-client privilege. Well, that's not a basis for ruling on a summary judgment. And, you know, it was apparent from other comments that she made during the course of proceedings and in the judgment itself that that had colored her view of this entire case. And whereas I will say that that should have been admitted, I mean, marginally or minimally, it's a legitimate dispute as to whether or not those emails should have been made. I'd like to return to the summary judgment issue, if I may. And that is this, that in her motion for summary judgment, Susan said, my husband is a lawyer, and he should have told me that this would convert this into marital property. And I don't know that somebody would have that fiduciary duty in the first instance. First of all, she's a real estate broker, and there's a lot of inferences that can be drawn from that, including the fact that every time she sat in a real estate closing, there were two lawyers involved, and she had plenty of lawyers who she could have consulted with. Which, given that during the motion for summary judgment proceedings, she, I believe it was in an affidavit, she said, I thought it would remain my non-marital property. Why are you thinking about that? Why are you thinking that, if you know that there's a concept of non-marital and marital property, why are you relying upon your husband to make that determination for you and never discuss it with him? And why aren't you getting independent advice? I just think that the whole concept of Mr. Kuratsuchi having a Well, if we accept the concept that he was representing her at the time, it's really not her obligation to seek out independent advice. It's his obligation to tell her to. But is it his obligation to say, this property, which is now going into my name, and you're a real estate broker and you know what that means, if we ever get divorced, it's going to make a difference? Well, I think there's case law that supports that. I think the first thing that has to be discussed here is, was he her lawyer at the time? And we haven't really discussed that. Right, and I do want to discuss that. The question is, if he was her lawyer, then yes, he has an obligation if he's going to benefit from the transaction. And this is what Judge Kennedy relied on in her ruling. If he is going to benefit from the transaction and he is her lawyer, it's his affirmative obligation to explain to her the ramifications of the action, of the transaction. So, really, I think what we need to discuss here is, was he her lawyer? Well, there were facts there. Or, you know what? I actually said that wrong. Was there enough evidence at the time to rule during a summary judgment proceeding that he was her lawyer? No. And also there was contrary evidence. The evidence that Susan presented was that she said, he was my lawyer, his name was on the deed, he was involved in this other transaction that took place contemporaneously. What did she mean by his name was on the deed? The deed that transferred Rasher into the tenancy by the entireties. His name was on it. It's prepared by Jim Kearns. So it does say it was prepared by Jim. Right, but in Jim's response to the summary judgment, he said that I did not prepare the deed, Susan prepared the deed, Susan almost always prepared the deeds, I couldn't even open the computer files under which those deeds were prepared. Did Susan take a position with regard to that? No. Except that she did acknowledge that she had access to all Jim's computer files and transferred them to a disk and deleted them from their computer. So I think at least there's a reasonable inference that she would concur with Jim. But also Jim said that Susan never – You think there's an inference that she would agree that he didn't prepare the deed? No, that she would agree to what Your Honor's question was, would she – she didn't say it during the trial court, but would she have had the – did she do these things? Did she have his files available to her? Could she have written the deed? And the answer to all those questions. From the perspective of when you add into it that she had access to his computer files and indeed deleted them all from their computer, means that that certainly was a possibility. Also Jim said that Susan would never rely upon him for legal advice and didn't in this particular instance. It was – so I think that if one analyzes this situation purely from what went into the record prior to the court ruling on summary judgment, that there were conflicting statements of fact, there were inferences – reasonable inferences that could be made in favor of Jim Karasich. And therefore – And wasn't there a motion at the time of trial to bar any further testimony about the Rasher property? Right, there was. And I believe that motion was granted because other issues were involved. What happened with all of their – you know, the HELOC, for example, which is debt, and that got argued about. And who paid the expenses, so whether there was maintenance attendant to – whether there would be maintenance to be paid. So a lot of evidence came in that would have related to the Rasher transaction. I also do want to say at the summary judgment time, Andrea Boddicker, you know, did end up saying, I am an attorney. I did represent us on that other transaction that was going on at the same time. So I think for a summary judgment, the conclusion that Judge Kennedy is making is that Jim Karasich talked Susan into doing this, and Susan had no idea what the consequences were. And I think under the facts as known at the time that the motion for summary judgment was heard, that isn't a conclusion that could be made clear or free from doubt to end up ruling on an issue that requires clear and convincing evidence. Then – Well, I think really it's better stated to say if you read her opinion – or I'm sorry, if you read the transcript of her finding, what she really did was she imposed a presumption on him because she came to the conclusion that he was her lawyer. And as a result of that, she said if a lawyer benefits from a transaction that he's involved in, there's a rebuttable presumption that it was done by undue influence. And it's the lawyer's obligation to rebut that presumption by clear and convincing evidence. And based on his affidavit, he did not do so. Isn't that her ruling? I would say that's probably at least 98 percent correct. Okay. But the clear and convincing evidence shouldn't have been ruled upon in a summary judgment environment because he did present facts and reasonable inferences that should have resulted in both people testifying. I'm sorry. Go ahead. What about these presumptions? Is that something appropriate for a summary judgment motion? There were two conflicting presumptions. Right. And courts have ruled that when there are conflicting presumptions, it's now a tie. Yes, I know. But what I'm saying is, is that something that you should even do at a summary judgment, have a tie? Well, I think once you do have – when you say the presumptions are equal or equivalent and there's one on each side, then what the court does is it decides it by hearing all of the evidence in the case. They don't decide it on the basis of presumptions. And one of the things I was going to say at the beginning, and I'm afraid I'm using an awful lot of time here on this, but that, you know, summary judgments are unique. And they are – I would think it's fair to say they're discouraged. And that's in every kind of case. But I think uniquely in a dissolution case, they tend to be very inappropriate because credibility is such a key issue. You know, in every case, there's people who have myopia about their side of the case, and, you know, and greed and selfishness enters into a lot of them. But in a dissolution case, you have bitterness, anger, jealousy, hatred. And you have a pot of motivational stew for people to really require to have their credibility measured when they're making claims such as this. And if one looks at this entire record, you can see not entirely, because Judge Kennedy did bar some evidence, what would have happened in a whole trial about Rasher and what the court would have learned in a whole trial about Rasher. What the court would have learned is that Susan, who was a real estate broker, signed a deed into tenancy by the entirety. On the same day, Jim went on a home equity line of credit on the Rasher property that was funding Susan's investment property. Are you saying that at the end of the day, the judge didn't know any of that? No, she did. I'm saying two things. That if one looks at the whole record, number one, when there was a motion to reconsider at the end, it should have been granted because the judge had heard enough. And number two, I'm trying to bolster the fact as to why a summary judgment is inappropriate in these cases because so much happens between the parties thereafter. Could you finish that? So Jim went on the home equity line of credit on the same day and did what? On the same day that the tenant, or within the very same short time period, I'm not sure it was the same day, that the deed was signed by Susan, putting him on the Rasher property and the closing on the Walcott property took place because it was, the HELOC was related to purchasing the Well, any bank would have required that. The Walcott property. Any bank would have required that. Okay, but nevertheless. If it's to be on the title, he has to be on that line. Right. But nevertheless, it created an indebtedness of Jim Kuratsuchi. And he re-upped on that indebtedness three more times. Yes. And when there was fire damage. Yes, the proceeds were deposited into a joint account. And they added to the house. Yes. They added to the value of the house. Doubled the size. Right. Those are all factors that you would suggest support this notion that he, this was truly marital property. Right. And it was over a period of 11 or 12 years, too. I mean, and also during the course of the marriage, both parties worked. There's a dispute about who made how much money when. But they were both paying the marital expenses. All right. How about your, are you going to briefly touch on this notion that you think that emails to an attorney are not privileged? Well, yes, I do want to talk about that. Emails to anything that's privileged, any communication that's privileged, is privileged with certain exceptions. And this meets the exceptions. And the main exception being that if you make the communication without an expectation, a reasonable expectation of privacy, you have waived the privilege. And this wasn't like that other case where somebody left the thing sitting on the open for review. This is a case of first impression of Illinois, and you're honest. I really don't think that many people sending emails think that this is for everybody to hear, especially to a lawyer. Well, let me, if I may, talk about that and try to defend it. Your alternative argument was, though, that even without these, you still should have gotten past somebody. Right, right. And my argument is, assuming that that happens and this case is remanded, I would like to see the emails put in MS. Because I think, you know, one thing which I find extraordinary here, and I would like a minute to defend the use of the emails, but, is that, you know, the whole concept of Jim had a fiduciary duty and I didn't know what I was doing is negated by those emails. And everybody knew it. And I think it's really unfortunate that this case got litigated in the position that it did when it clearly wasn't the truth. But that's my personal feeling. As Dennis Miller said, I could be wrong. But in terms of whether these are admissible or not, or whether there was a reasonable expectation of privacy, the parties shared a screen name and a password. And that meant that one of them had access to the other one's email without having to go through anything but clicking on the email itself. Back when this was done, just as today, if Susan Caruso wanted an expectation of privacy in sending emails, it would have taken her one minute to open a different email account so she could communicate with her attorney and not have those communications available to somebody else. And I think that this is analogous to voicemails, which have been allowed to be used, because if you get to hear play and Mr. Haber's on the voicemail going, this message is for Susan, is there a requirement that Jim Caruso should hang up? I don't think so. So I believe that the emails should be… There's almost one little extra affirmative step here, and I'm not sure how it is contrary to your argument, but when you look at an email, a list of emails on whatever type of account you're using, it usually shows who it's from and who it's to, and there's usually a ray line and whatever, it's either fillers or not. And so at the time, presumably at the time that James opened that email, he knew, he had to move that pointer over, and he knew he was about to read an email between his wife, who he was in the middle of litigation against, and her lawyer. He knew that he was about to read a communication, an attorney-client communication, and he had to make a decision to click that button. He could have not clicked the button. So my question is, does he have a right to click that button? I think she made it, I think the way the email account was set up, and maybe this is part of why there should be an evidentiary hearing on this, because I don't know what the way it was, I don't know what the, I mean the title line. Correct me if I'm wrong, there's not much of a record on this in terms of how this was set up. That's correct, although there was an acknowledgment that they had a joint email account and not a denial that they had the same screen name and password. So what do you think? Well, obviously you think he has a right to do that. Well, I think it's different than opening a sealed envelope. I really do. I think when you put something in a sealed envelope, there's an expectation of privacy and that only the addressee will open it. When you have an email, and email is new, when you have email and you have basically said to some other person, not necessarily your husband, but to some other person with whom you share the account, you know, here's the letter opener, go ahead, I think it's different. So if the court disagrees. There's no law in Illinois. Not in Illinois that I know of. All right, anything further at this time? No, I mean the temporary maintenance argument I've made and I would rest on what is in my briefs. Thank you. All right. David. I'm here to please the Court also. Judge, I'd like to address the first argument with regard to the summary judgment. And I think Your Honor questioned whether or not the evidence that was presented at trial can be now used to look back at the motion for summary judgment. And I think that it would be inappropriate because the motion for summary judgment, once determined and that judgment is entered, basically disposes of that issue. In fact, in many cases, the entire case would have been resolved. There would never have been an evidentiary trial thereafter, which you can then kind of bootstrap yourself into saying, oh, well, the evidence at trial indicated this, and so now we should take a second look at that motion for summary judgment. I don't think it would be appropriate to do that. That would be our position on that. It's not a final order, though, is it? It is not a final order until the entire case. Can't the judge always reconsider an interlocutory order? The Court can always reconsider, and in fact was asked to reconsider this and denied that reconsideration. Yes. You know, if your client is saying that he was my lawyer and I wasn't told any of these things about the ramifications of the transfer from my name into the joint tenancy, and then you have the husband saying I wasn't her lawyer, she prepared the deed, I didn't have anything to do with representing her, I did do the closing on the other property with the other two people that she was involved with, how does, at summary judgment, the judge conclude that there's no question of material fact as a matter of law that he is her attorney  and because he was benefiting from the property, there's this undue influence, and therefore I'm finding it's a matter of law that he's the attorney? I think it's fairly simple, and the reason why the Court did it is because the Court was familiar with what the record said, and if you look at the amended response to the motion for summary judgment, you will note that Mr. Kuratsuchi neither admits nor denies whether or not he was the attorney, and he merely indicates that no one objected to his representation of all of the parties in this transaction. No, I mean the Rasher property. The Rasher property, on the Rasher property. His amended affidavit, I did not have an attorney-client relationship concerning the Rasher property with my wife Susan, and therefore no fiduciary duty existed. He denies it. He denies it, he doesn't deny it in the amended response to the motion for summary judgment, in fact, he specifically says I neither admit nor deny it, but no one objected to it, and the documents on their face clearly indicate that this transaction took place at the same exact time and the same date that he prepared the deed which transferred the property into the limited partnership between the three partners, Susan and her two friends. I thought there was testimony that one of those people involved in that prepared the deed. No, the testimony and the record is clear that Andrea Bulker, she prepared the organizational documents for the LLC, but the deed that transferred to the LLC, the actual property from the three individuals, is a deed that was prepared by Mr. Kuratsuchi. So he in fact prepared the deed for the three individuals transferring the property into the LLC. So his representation of those three individuals is clear from the record. But how does that translate into his representation of her on the rasher? On the same exact date, the same recording, and by the way the same notary on these deeds, he prepared a deed transferring the rasher property to himself and his wife. So at the time there is no question in the record that he was the attorney for not only the seller of the Walcott property, but also the buyers of the Walcott property, all three of them individually, and his wife individually with respect to her non-marital ownership of the rasher property. This is sort of an unusual case. We have a situation where you have a husband and wife. One is a real estate broker. Is that your term for her? Yes. And then we have him, an attorney, and a part-time attorney, whatever. But they're married, and he says, I was not representing her, I was not her attorney on the transfer of the rasher property. Now, is the judge here making a credibility determination? No. I think the judge, it's a convenient. When he said I was not acting as her attorney. Right. I think it's a convenient argument and belies the facts of the case or the actual. At that point there were simply affidavits. The case law says that if you prepare one affidavit and the other side prepares a counter affidavit, that that's really an inappropriate situation for summary judgment. Right. But in this case there was more than affidavits. There was documentary evidence that the court specifically relied on. If you look at the court's findings, the court says, I relied on five deeds, all of them prepared by Mr. Kuratsuchi for all sides of the transaction. Didn't he say at trial that she prepared the deed? He said that she typed them, that he did all of her, I'm sorry, that she did all of her typing, all of his typing for him. She didn't prepare, she wasn't a lawyer, she just did the typing for him because he was the lawyer and she helped him out. Her doing typing is not her preparing the deed. Clearly if an attorney puts on a document that this document has been prepared by James Kuratsuchi, certainly one could rely on that statement that he in fact prepared that document, recorded the instrument, notarized as such, not one but five deeds. Isn't the question of an attorney-client relationship generally a question of fact? I mean, do courts usually make these determinations as a matter of law? I think not, Judge, but when you have documentary evidence that is conclusive on the issue of the attorney-client relationship, there's no need to go into any additional factual... So you're saying because he prepared the deed, it's conclusive. Because he prepared the deed and because that is consistent... Somebody had to prepare the deed. But it's consistent with the affidavit of Andrew Bullocker, who's an independent third party, who says clearly he represented us. He also prepared the deed that transferred this property into our... You keep conflating two different transactions, okay? Admitting that he was the attorney on the Walcott transaction, that doesn't mean that he's the attorney on the Rasher transaction. They're separate transactions. And I don't know of any law that says that, you know, just because you participate in two transactions in the same day, that makes the lawyer on one transaction the lawyer on the other transaction. In fact, I think the law is clear that you can represent somebody with regard to a singular transaction. And she said, the judge said, at the trial, she made that leap. She said, well, he was her lawyer on that day with regard to Walcott, so he's the lawyer on Rasher. And just because he says he wasn't doesn't make it so. Is that an appropriate ruling on summary judgment to say, well, just because he said it's not doesn't make it so? It's not a question of whether it makes it so. It's a question of whether it makes it a material issue of fact. And so my question is, can he represent her on Walcott and not on Rasher? Can he? Yes. So what do you have that shows, outside of the Walcott transaction, what do you have that shows that he represented her on the Rasher transaction? I have the Rasher transaction. I have the deed on the Rasher transaction, which clearly indicates that he prepared this instrument. He's an attorney. She's not an attorney. Counsel indicated that there should be an inference that a real estate broker knows the consequences of this transfer. The 12 years of activity that is clearly on the record, he signs off. He enters into the home equity line of credit. He's obligated. He takes on, however, I don't know what it was at the beginning, the amount. That predated the deed on the Rasher property. The home equity line? Yes. And he was on it? Yes. That's what the record reflects. All right. So actually he had already obligated himself to debt on the property before he became his claim of part marital property. What he obligated himself to. What happened was is that. . . I thought it was after. What happened was is that wife allowed her non-marital property to be used as collateral for marital debt that was created. So the home equity line is before the transfer. Yes. All right. Now what about the event with the fire, the insurance proceeds that are deposited into a joint account, these obligations that he took on as far as the home equity line of credit, either pre or post, and the fact that this home was changed from one size to a larger size. So we have about how many years of this joint ownership, at least alleged joint ownership? I think about 10 years of alleged joint ownership. And all those things don't indicate that this was marital property? Being obligated on the debt, accepting insurance proceeds, changing the actual size of the home, doubling it, those things don't indicate any form of ownership? No, Your Honor. Because I think the case. . . They indicate a question of fact then. Not on the issue of whether or not he was the attorney for Susan Kuratsuchi at the time of the transfer. Because that's really what we need to focus on. Because he has the burden, once you establish the attorney-client relationship, you don't go into the issue of marital and non-marital property. Let's go back to one thing. All right. You have the judge determining there's an attorney-client relationship. And then there's this presumption that he's benefiting. And I think you can fairly say that. However, can't you also say that isn't it a reasonable inference that he's also becoming obligated? So can the judge now say there's no question of material fact at this partial summary judgment? Hasn't she made these credibility determinations about who's telling the truth when she's not supposed to do that at that stage? I understand. But respectfully, I disagree because it's not an issue of credibility. She looked at the documents which existed at the time of the transaction. What are you doing with these presumptions? What about the presumption that when there's transfer of property during the marriage, it is presumed that it is a gift? What is she doing with both of these at a summary judgment proceeding? She's not. She's not even dealing with it. But she has to. The law creates these presumptions. And there's a case that says they sort of even themselves out. Respectfully, Judge, I think that case is being misinterpreted. I'll tell you why. That case deals with conflicting presumptions of whether or not property is marital or non-marital property. All right, put aside the case. This is a presumption of undue influence. Yes. You don't reach that. Put aside the case then. How is she making this determination at the summary judgment stage that there is a presumption of undue influence? Because the presumption arises automatically. That's the black-letter law. Yes. Once the attorney-client relationship exists. All right. Now, it's also black-letter law. Forget about the Judge Tumen case that says they equalize each other. It's also, these were her words too, I think, but black-letter law that when there is property transferred during the marriage, it is presumed that that transfer is a gift. I agree, Your Honor. All right. But here's the problem. Yes. That transfer never legally took place because the deed is a void deed. You don't get to that stage. All right. Did Judge Kennedy go through all of these things that you're talking about when she made her summary judgment determination? Yes. Because if you read the judgment, she specifically indicates that she's already made a determination on the non-marital nature of the real estate, of the rational property, so she doesn't go further into it. But she already made the determination that the attorney-client relationship existed, and as a result of that, a presumption of undue influence resulted. And you think that's appropriate when there's a counter-affidavit that says I was not acting as her attorney? It's appropriate when the documentary evidence is clear and that that's a specious. What case would you say supports this proposition you're presenting to us now that when there are contrary affidavits, if the documents support one of them, then the court can say it's a matter of law? The summary judgment principles are pretty basic. The court considers all the evidence on file. I think if you look at the Claskin v. Kleepak case, which is extremely analogous to this situation, even in that case where the parties had a 17-year relationship, where they vacationed together, where they went to dinners and the opera, et cetera, and the client in that case left real estate to the attorney, Rolla Kleepak, the Supreme Court said no, you can't do that, because that attorney-client relationship, she didn't even represent him on that transaction. It was only an inference that she was involved in that transaction. In fact, her affidavit indicated that she had nothing to do with the estate plan that gave her that interest. We didn't have any conflicting presumptions, did we, in that case? And we don't. They weren't a married couple. Your point is that this conflicting presumption discussion doesn't apply in this case because the presumptions aren't conflicting here. Exactly. What you're saying, I think, is that before you get to this other presumption about a transfer between spouses, you have to get past this first problem, and that is whether the transaction is void. Exactly, Judge. That's exactly it. And the conflicting presumptions only deals with the issue of whether property is marital or non-marital. We don't get to that because the property never changed from her non-marital property. There was no transfer because the very deed was void because an attorney cannot benefit from a transaction with his client. Okay. That's the reality. All right. So let's get back, then, to these conclusive facts that you say lead to the conclusion that, as a matter of law, James is her attorney on that day. The typed deed has his name on it. What else? He's a lawyer. What else? On the day that this transaction occurred, I think it was September 8th, whatever that date is, he also attended a closing where he represented the seller, had a power of attorney for the seller, represented the buyers of the transaction on the Walcott property, and then represented one of those buyers, his wife, on the transfer of the marital residence to himself and his wife. That's abhorrent. Say that last one again, please. That he also, on the same day, same notary, transferred the house, the raster property, from himself to his wife. He should know better. He has an obligation to advise his wife, notwithstanding that it's his wife. He can't rely on the fact that it's merely his wife and he gets to do this willy-nilly. This is his wife. He needs to tell her, by the way, if you transfer this to me, this is presumed to be a transfer of your non-marital property, which you purchased three years prior to our marriage, into marital property. He doesn't get to do that. Ms. Klepek didn't get to do it, and there was much less evidence in that case. And the Supreme Court said, no, that transaction was a void transaction and she couldn't benefit from that relationship. He would like you to believe that just because she was a real estate broker, that there's an inference there. How about the inference that he was a matrimonial lawyer and he should know better? Is there an inference that he was taking on an obligation before the property was transferred that this was marital property? I don't understand your question. You're saying he signed on to the home equity line before there was a deed transferring ration. Correct. Was there evidence that this was a gift to the marriage? Was there evidence that the loan was a gift to the marriage? No, but that he was already obligated on a home equity line. Exactly, but that home equity line of credit was then used to acquire marital assets. So wife basically allowed the collateral of her non-marital property to be used so that they could borrow money and then create marital property, pay off a mortgage on another piece of property that they owned that was clearly marital property, put money into IRA accounts, buy two automobiles. All of that was marital property, which the court distributed. We believe the court distributed it appropriately, and that's the subject of our cross-appeal. Did the trial court intend to, I mean this is your next argument, did the court intend to divide this property evenly and isn't one of your other arguments that that wasn't done? Exactly. Why don't you move on to that? Well, with regard to that, Judge, I just want to ask one question before we leave, and I'm sorry. Does the conduct during the marriage, at the time that they were living on Rasher, of supporting the property by way of their marital income transmute the property to marital property? No. When she is getting salaried during the marriage, isn't that marital property? And if you use that money to pay for the mortgage on Rasher, doesn't that? The case law is clear and recited in our brief that if you also get a corresponding benefit of living in the property, and actually Judge Kennedy painstakingly went through that and actually said basically it was $900 a month to live in that property, and clearly that was a benefit to the marriage that he was able to live in that property even though it was her non-marital property. So no. Do you want to go on to that other issue? Yes. So on the issue of the division of the property, what Judge Kennedy did was she specifically indicated that this was a case, based upon all the facts and circumstances, that indicated that there should be an approximate equal division of the marital assets. I mean, she says that on more than one occasion in her decision. We believe that is true. But what she then did is she allocated this debt to Ms. Kuratsuchi. And what she does is she basically says that I'm allocating this debt to Ms. Kuratsuchi because I want to sever the economic ties between them. But severing the economic ties between them is not one of the statutory factors under 503. When you make a determination as to how you're going to dispose or equitably divide marital property, there is a litany of things that you have to look to. That is not one of them. So when you divide marital property, you also have to look at the marital debt, the underlying marital debt. The division is of the net marital estate, not the gross marital estate. So when you look at the net marital estate, the division is such that Ms. Kuratsuchi got 22% of the net marital estate, and Mr. Kuratsuchi got 78% of the net marital estate. We believe that was an abuse of discretion. We cite in our brief the Lee's case, which is very closely analogous to this, where there was non-marital property that was used as collateral for the creation of marital debt. It's undisputed that this debt, this $249,000 of debt, which was painstakingly traced by Ms. Kuratsuchi at the time of the trial, with exhibits, that all of that debt was used to acquire marital assets. How is it appropriate for the judge then to say, well, but we're going to assign all of that debt over to Susan, even though it created the very marital assets that you are now dividing? We believe that that was an abuse of discretion. If I can have a moment. Surely. If I can go back to the e-mails, that's an issue. On the e-mails, Judge, I think what's important to understand here in this case is that Mr. Kuratsuchi has filed a motion for access to this computer. In that motion, he says that on October 10th, the date that Susan Kuratsuchi filed her petition for dissolution of marriage, she confiscated the computer and she changed the passwords. So he acknowledges, and in the record it says specifically, that this computer that they allegedly had joint access to and that they allegedly shared this common e-mail address was confiscated by her and she changed the passwords. So he can't possibly now say that he accessed that e-mail. Did she change the passwords to the computer or did she change the passwords to the e-mail account? She changed the passwords to the e-mail account. How did he get on there? We don't know. There is nothing in the record that indicates how he actually acquired those e-mails. We don't really know how he acquired those e-mails. It's not like the Parnes case, the New York case that was signed up by counsel, where it indicates that it was in plain view. He specifically says that he was forced. I don't understand. Why didn't somebody take a deposition in this case to find out how he got these e-mails? I know because I was there and what happened was that the e-mails were suddenly used and we filed a motion to eliminate prior to the trial and the court already indicated that those e-mails were not going to be part of the trial. So that was no longer an issue, a trial issue. It would have been nice to know, wouldn't it? It would have been nice to know, just, you know, interesting. But he indicates, and the record says, indicates that he in fact was forced to go out and buy a new computer and to secure his own Internet service because she had confiscated it. So for him to come now and say. But we know, based on our limited technological abilities these days, we know that it doesn't matter what computer you're using. I mean, I can pull out my iPad and if I have the password, I can get into an e-mail account regardless of which device I'm using to get there. So the question is, I mean, you know, we're aware of this motion, but the fact of the matter is that when he goes into court and he says she took the computer or she locked me out of the computer, that doesn't lock him out of the e-mail account. And obviously he got in. So the question is, how does he get in? And does the act of getting in, is that, I guess to turn it around, does she have an expectation of privacy there? Or in this area, is it intended to be a confidential communication or not? Well, I think what's instructive, first of all, he's a lawyer. So I think he's held to a higher standard, first of all, because he knows that a communication between an attorney and a client should be considered privileged. But secondly, I think the Parnes case, which was cited by Mr. Kuratsuchi, is very instructive because in that case the litigant was able to actually find the password on the desk that allowed that person to then access the computer and the e-mail and to get that e-mail. And the court in that case said, we're going to let you look at the one that was sitting on the desk, but just because you found the password on the desk and then utilized that password to go in and get this e-mail, that's not going to work. And we know in this case that Ms. Kuratsuchi did in fact change the password. And the only thing in the record that indicates that they shared an e-mail We know that because he said that in the motion? I mean, is that a fact that we can accept, that she changed the password to this e-mail account? Yes, because he admits that in his motion. So then he somehow, then your next logical step would be that he somehow found the new password? We don't know how he got it. I know we don't know. We're going back and forth on that. I don't know. But, I mean, if that was the case, then that would lead us to the Parnes case because, you know, taking the active step to trying to find this password and then getting in, I mean, obviously, then that would be confidential communications. But, I mean, if she still maintained this e-mail account, all the while knowing that he had the password to it, then one would say, well, how does she expect that to be confidential? But there is nothing in the record that says that they even in fact shared this. It says that that SJ Interact account, there's two different e-mails. One's SJ Interact, and the argument is that SJ stands for Susan and Jim and that they shared this. But the only thing in the record indicates that in February of 2007, they shared this e-mail account. There's nothing in the record that indicates that at the time of the, 2009, there's nothing in the record that indicates that at the time of the filing of this case that they shared that e-mail address. I'm just saying from our point of view, it would really be helpful, as Councilman said, this is maybe a case of first impression. Thank you. It would certainly be helpful to the trial court if there had been an evidentiary hearing to determine how this e-mail account was accessed. Just saying. Yeah. Thank you for your time. All right. Thank you. Briefly. Mr. Ostroff. A lot of time. There's a couple of things I'd like to highlight. Hopefully I get through this very quickly. You know, the preparation of a deed, which Jim said Susan prepared, even if somebody types a deed, is that rendering legal advice? I really don't think so. And they're frequently done in offices, not by an attorney, but by a clerk or a paralegal. And what is in this record that says Jim Kuratsuchi knew that the property was changing from non-marital to marital property? She made an allegation that he practiced matrimonial law. You know, whether he did or he didn't, I've practiced matrimonial law for 38 years, and I get surprised every day by things that I did not necessarily know. Well, but you made the point in your briefs that because she's an experienced broker, she should understand the ramifications of this transaction. Well, if a real estate broker should understand it, certainly a lawyer should understand it. Not necessarily. I mean, I could tell you absolutely nothing about criminal law, just about. I mean, you know, she made an allegation that he practiced matrimonial law. He hadn't been a lawyer for very long at the time that this all took place. And also, Your Honor, has made reference to, you know, the allegation that Jim was benefiting from the transaction. Well, that's not necessarily true. He was potentially benefiting, he could potentially benefit from the transaction if they remained married and he pre-deceased her. I mean, she pre-deceased him, I'm sorry. Or if they got divorced and the court would have called this marital property. But he was also putting himself on debt. And a lot of real estate now is underwater. It actually would have ended up as a detriment to him. And he had absorbed that potential detriment. And Mr. Haber's been in the case longer than I was. I thought it was at the same time. Maybe it was a little bit beforehand, even before this got done. Andrea Boecker, she was not independent. She's not an independent witness, just verifying what Susan Lawrence said. She was Susan Lawrence's friend. And Susan Lawrence testified that they were in real estate transactions together before this one. And she's an attorney, too. And I don't know that the access to the attorneys that Susan had, had any more or less knowledge of what converts something to marital or non-marital property than Jim Kirisucci had. There was a motion to reconsider at the end of this case, where Mr. Kirisucci pointed out all the evidence that the court had heard. And the court denied that. And I think that evidence, Justice McBride summarized some of it. And also we pointed out in our brief that, you know, it was a, at the time of the transfer, it was a small part of what Susan would claim was non-marital property. And that also leads to the conclusion that it was intended to be a gift. Let me ask you this, because I want to go back to the affidavits. You know, I think one could say, a court could say, well, when he says it was the affidavit, I did not act as her lawyer. We could say, well, you know what, that's a conclusion. That in and of itself, that conclusory statement in and of itself does not rebut the facts that are before us. So Susan lays out in her affidavit discussions that James has with her concerning the risk that she's facing with regard to exposing the Rasher property to creditors. And he never denies having those conversations in his affidavit. So couldn't we say that Judge Kennedy was right when she said, well, when he has those conversations with her as to the legal ramifications of the state of the title of Rasher and how she should take certain steps to protect herself from creditors, that he's advising her legally? And the mere statement in his affidavit, I wasn't her lawyer, is a conclusory statement that doesn't sufficiently rebut the facts that are set forth in Susan's affidavit. I mean, what else, you know, he makes a statement, I did nothing to entice, pressure, force. I mean, those are very simple, conclusory statements. But my question is, is that enough to just say I wasn't her lawyer? Or is that a conclusory statement? So under 191, that would not be sufficient? Well, it's more to what he said, though. He also said that she never relied on me for legal advice. And he also said that she prepared the deed. And I don't think – Did he say that in his counter affidavit? Or is that something that came out later? I think he said it in his counter affidavit. At this point, I'm lost on that particular issue. And I don't think, going to both what Justice McBride said, which is that there are conflicting presumptions here, and you can't get around that. And you also – I don't think we can ignore that she's a real estate broker. But your opponent says that you don't get to those if you have a void transaction in the first instance. I don't think it's void. That's another thing. I mean, it might be void of role. Well, is it void if the person is, in fact, her lawyer, he benefits from it, and there was undue influence in the transaction? Well, but they're saying there's a presumption of undue influence. And I don't think that the facts as they came out, and also with her being a real estate agent, I just think that's fanciful just to say that somebody who's a real estate broker and has been involved in closings and has invested in her own property, I just had no idea that when I put my husband's name on this, it meant nothing. I mean, that's just absolutely absurd. And I think that the result was a matter of Justice Kennedy, Judge Kennedy, which she says in her judgment, being angry at him for attempting to use the e-mail, and then she mentions discovery sanctions too, but discovery wasn't over in the case at the time of the summary judgment. So to you, those are not bases to find that somebody has a right to a judgment that's clear and free from doubt on an issue that requires clear and convincing evidence. I briefly want to respond to the division of property issue. Before you do that, I just noticed in re-reviewing James's affidavit, he says, the e-mail attached from my wife to her attorney was discovered by me on our computer at home. So he makes the statement that this is the home computer that he finds us on. Right, which I think that was never, I mean, that's part of our case. I do want to say in response to what Mr. Haber said about the motion to have access to the computer, that was made after. These e-mails that are in question here were at the very beginning of the case. The motion to have access to the computer, I believe, was filed afterwards. So she may have changed the password at some point. But it was their home computer that they shared. It was the home computer that Mr. Kurosuchi said, I can't even open, you know, Word files or whatever, you know, Word Perfect files, whatever it is that he used. And that's why Susan always prepared the deeds in real estate transactions, even though my name might have been on those as an attorney. Do I have time to address the cross-appeal? Well, I think you really need to sum it up. We do have another proceeding after this. Well, with regard to the cross-appeal, I would point out that Mr. Haber brought a motion for reconsider in front of Judge Kennedy in which he made these same arguments. And she denied the motion to reconsider. And in her judgment, she laid out the statutory factors in 503, including the amount of non-marital property that's awarded to each party. Susan's non-marital property at this point vastly exceeded James. And when he talks about the debt, I think that debt being put on her side of the ledge on non-marital property, you take it out of there, it just increased her equity, her non-marital equity by $245,000. So he is saying that, you know, and maybe I was a bit lighthearted in the brief when I said it, but he's basically saying she gets the asset, he gets the debt. And, you know, that's not the way we do things. And the marital property was divided something less than 50-50, not the 78-22 that Mr. Haber calls in, because one of the things he talks about in his brief is the two investment properties each of them got. Well, the one Susan got had $183,000 in equity in it. And also, the judge, in her judgment, historically earned a profit, which Mr. Haber, I think in his brief, said that it did not, but it does. So it was not 50-50, but the way the non-marital part of this judgment stands, this division of marital property is not an abuse of discretion when one looks at the record and says that even with Judge Kennedy's rulings, let alone the court can affirm on any basis found in the record, it's not an abuse of discretion for this property to have been divided in this fashion. All right. Thank you. Mr. Haber, you have a brief word. With regard to the division of the assets, I think I can quote former President Bill Clinton, it's just math, and that's really what it is here. The calculation as to what the division of the assets were is set forth in our brief, and it's clear that if you net off that marital debt, which the court clearly indicated was marital, there's no question in the record the court recognized that all of that debt was marital. If you net the marital estate by that debt, the division is 78-22, and that is an abuse of discretion in this case, notwithstanding the fact that Susan would have her non-marital property. And so for that reason, we believe that it should be reversed. Thank you. All right. The case was well-argued and well-briefed, and we will take it under advisement. We're going to switch panels now for the next appeal.